14-1585 K.C.M. v. Lincoln D. Chafee, etc. et al. May I proceed, Counsel? Thank you, Your Honor. My name is William Capell. I'm here on behalf of Plaintiffs' Appellants, Danny Cassidy and the putative class. The gist of the complaint in this case is that systemic problems in the operation of the Rhode Island Child Welfare State Agency, known as DCYF, are subjecting children in state foster care custody to unreasonable risks of harm. The complaint only seeks injunctive relief to cure these systemic problems. The suit was filed in 2007 and was before this Court once before in 2010. And at that time, this Court ruled that the next friends for the children are suitable representatives for them for the purposes of this litigation. And the Court made clear at that time that it was being guided by the general principle that litigants should be afforded access to federal courts in pursuit of their constitutional and statutory rights. Despite that ruling, the District Court in this case effectively closed the door on the plaintiffs. The District Court failed to reach a decision on whether or failed to address whether the class should be certified and effectively closed the courthouse door on nearly 2,000 putative class members. As I understand it, the basic rationale behind the decision that the judge made on class certification was that an intended and perfectly candidly disclosed objective, comprehended within your request for class certification, was to have access to the records of every child subject to the jurisdiction of that agency. And that before the judge, in effect, would engage in a class certification that had that discovery consequence, he wanted to know whether there was an argument to be made on the specific named plaintiffs that would indicate that that consequence would be justifiable. And, in effect, it found that it was not. How does, in your view, number one, is that a legitimate consideration? And if it is, how should the judge have implemented that consideration short of doing what the judge did? Your Honor, our view is that the District Court's approach was improper and an abuse of discretion, both with regards to the Court's failure to decide class certification and also with regard to the Court's ruling on discovery. But that doesn't answer Justice Souta's question. You see, there's a tension that District Courts face. You've got to have suitable class representatives to proceed with class certification. And the District Court has a perfect right to make certain that the asserted class representatives really present the problems that are alleged to be endemic to the class, etc. And courts not infrequently do that by testing summary judgment before class certification. What's different here is that Judge Lisi went to a full-blown trial. Right. And there are no cases that defendants have cited or that we're aware of where a court, where it was found to be a suitable exercise of the District Court's discretion to go to a full-blown trial before deciding class certification. Should she have followed or extended the opportunity for a summary judgment test? Is that the way she should have done it? The Court had indicated that it was going to allow summary dispositive motions to be filed and then changed that, eliminated dispositive motion practice, yet still didn't turn to class certification. If there was a tipping point, as it were, in the argument that you're making, was the tipping point that she should have left open that opportunity for dispositive motion so that she would then have had a basis for certifying or not certifying, as the case may be, before trial. Is that basically the focus? Our position is, well, the courts here, there were numerous representative plaintiffs who were exiting state custody over the course of the suit. And the cases recognize that in those circumstances, the court needs to decide, turn to class certification promptly in order to avoid the prejudice of named plaintiffs. You're not answering my question. We want to know how prompt. We want to know when. And is it your argument that the point at which the judge made the mistake that would entitle you to a reversal was the point at which the judge said, we will not have, as it were, a preliminary test by means of dispositive motion, after which I will rule on class certification? Is that it in a nub? We clearly think the court had abused its discretion by that point. We actually think the court had abused its discretion earlier in the case. The court could have ruled on class certification any time after the second motion to dismiss was resolved, which was in July 2011. Any time after that point, we believe that the court should have decided class certification. The cases make clear. Can I switch you? I mean, the cases are set out in your brief, and we can, with all respect, read those as well as you do. But you've got a couple of other points in your appeal letter of particular interest to me. One is with respect to the pretermission of custom and policy discovery, and the other is with the denial of access to your own clients. Would you take those in either order you like? Thank you. I'd like to address the refusal of the court to grant access to the named plaintiff children. It's our view that that's a further abuse of discretion, and the court's refusal to allow the next friends and counsel to talk to the client children flies in the face of this court's 2010 ruling that the next friends are suitable representatives in this case. Cassie's next friend and counsel needed an opportunity to talk to her to see if she was willing and able to testify at trial. Her testimony could have been important. For example, the district court refused to admit into evidence certain documents concerning Cassie's experiences while she was in state care. We discussed this in our brief. But her own testimony about those experiences would clearly have been admissible. Another example, the statements she made to the expert psychologist who examined her before trial were hearsay, and the court did not allow that expert to state his opinion on whether the experiences she told him about had actually occurred. Well, she could have given testimony to the effect that they did occur and how those experiences may have affected her mental state. So, again, as we cite in our brief, a number of cases of overturned judgments where district courts have interfered with a party's right to consult with counsel. And those cases are cited at page 50 of our brief. But it's a general rule that clients are entitled to consult with their counsel and hear with the next friends, as this court previously indicated, the next friends were suitable representatives for the children. And I'd like to point out also on this issue that the defendants did not offer any evidence when it was opposing their request for access that the requested meetings could be harmful to the children. They relied simply on attorney colloquy. And in addition, the district court did not make any such finding. And beyond that, Cassie's treatment providers advised the defendant's counsel that it would not be harmful for her to answer questions about her past experiences when examined by the plaintiff's expert psychologist, and she gave her consent to speak about her past experiences, thus expressing a willingness to be involved with the case. Counsel, one of the arguments that opposing counsel make is that, yes, the trial focused on the individual claims of the class representatives, but in reality you had available to you and used at that trial a good deal of systemic evidence about what are the deficiencies in the system and how, from your point of view, they affected the experiences of your own clients. So the point, I guess, being that even if there had been a certified class, that trial would not have been all that different from the trial that you actually experienced. Can you explain how that trial wouldn't, from your point of view, been very different if the class certification had taken place? Yes, Your Honor. In fact, the defendants did not provide meaningful policy and custom discovery to the plaintiffs, and their brief fails to cite to any place in the record to support the notion that they provided that discovery. And, in fact, when they sought the protective order before the magistrate judge, they argued successfully that the plaintiffs were not entitled to custom and practice discovery because it would be burdensome and because the court had already decided that it was not going to proceed with the class claims until after dispositive motions. And so the failure to provide the custom and practice, the policy and custom discovery, was highly prejudicial. If we had been allowed the discovery we needed, we would have attempted to show that the children were harmed as a result of the, or facing an unreasonable risk of harm as a result of the systemic problems affecting the state child welfare agency. We were denied discovery, for example, into the harm that children, to which children would be exposed when reports of potential child abuse are investigated too slowly. Yet the court then ruled that the plaintiffs failed to submit sufficient evidence that the state's untimely investigations were putting children at an unreasonable risk of harm. I mean, that was a clearly prejudicial ruling and situation for the plaintiffs. Counsel, with respect to that, I have a question which maybe you or the state's lawyers can help me with. The parties have briefed and argued the existence of this overarching protective order, which the magistrate judge in a written decision described as effectively foreclosing all policy and custom discovery. I've searched the record, or more exactly a very good law clerk of mine has searched the record, and has been totally unable to find any such protective order. Apparently the magistrate made this decision, but no order was actually entered? Is that erroneous on my part or incorrect? Well, the court's, the magistrate's... I understand the court ordered it, and so it may make no difference for purposes of the appeal, but if there is a specific written order, we obviously ought to see it. There is a written decision. There's a written decision. As you know, a decision and an order are two different things. You may well be correct, Your Honor. I don't recall there being anything beyond the written decision of the court. It was affirmed by the district court judge. Yes, and again, the district court didn't enter a particular order. I mean, I found the district court's decision affirming it, which doesn't add much to it, but I just want to be sure that we have all the documentation we're supposed to have, because it's a compendious record. I think you're correct, Your Honor. If I could, I'd like to just go back to the class certification issue for a moment. The defendants' counsel make the argument that the 2003 amendment to Rule 23C1 permits the district court to delay ruling on class certification, and it's true that that amendment affords the district court some latitude in terms of case management, but in the words of the Seventh Circuit in the Bertrand case, which we cite in our brief, never is not within any plausible understanding of early, and we think that the logic of that. But the language of the rule is that class certification should be at an early, practicable time, and what is practicable is, by definition, going to vary from case to case, and where a district court has legitimate doubts about the adequacy or suitability of the proffered class representatives, there's obviously some reason to take more time if only to test that suitability through dispositive motions. Right, and here the court had the opportunity to do that, said it was going to test the claims through dispositive motions, and then eliminated that process. So clearly that's part of our argument that the court abused its discretion. But Judge Lisi made the observation that there was something unique about this attempt at a class action. Now, you point out she doesn't really elaborate on what she means by that, but I believe it was perhaps Justice Souter's question addressed at the very beginning of this argument. She did seem to be concerned about the invasiveness of having all of the records of all the children involved in the system exposed as part of these proceedings. To the extent that that was what she meant, that there's something unique about this, why was that not a legitimate concern? The plaintiffs never requested all of the records of all children in the system. The plaintiffs requested aggregate data, bearing on whether certain practices have a harmful effect on all children in care. But it never requested individual files for all children in care. Would assembling the aggregate data require an examination of every file? No, absolutely not. There's a computer system called the child system, and the state can assemble that aggregate data without incurring undue burden. Thank you, Counsel. Thank you. May it please the Court, Neal Kelly, Assistant Attorney General, on behalf of Gina Raimondo, Governor of the State of Rhode Island. Mr. Kelly, can I ask you a question? It's a question that's been bothering me. Please. Why on earth was the state resistant to class certification? What you're left with now is you've had this trial, you've gotten a favorable verdict. Even if we were to affirm it, and I'm not suggesting that we will, the way is open for the organizations that are supporting the plaintiffs simply to find a different set of class representatives and commence an action again. There's race judicata here now only as to two individual claims. How is that in the state's interest to oppose class certification? Well, that's true, Your Honor, although we did get the indication that Judge Lisi wanted to drill down on the specifics of the individual children before she reached class certification. Yeah, but it's clear that throughout the state was opposing class certification. I think I've checked the record pretty carefully on that point. Yes, Your Honor. By the same token, they could not support their claim, whether it was with the systemic evidence as it relates to these children in particular, and they had that systemic evidence. And they couldn't support it either factually or legally, and these children were supposed to be the representatives. But you're right, Your Honor, in the context of the effect of going to trial or disposing of this case among two individuals. Now go to the statement you just made. How do we know that they had the systemic evidence? There is a decision of the magistrate judge affirmed by the district court, which Magistrate Judge Allman describes as effectively foreclosing any and all custom and policy discovery. All right? So how can you say in view of that that they had the systemic information? Yes, Your Honor. Putting it in context, as this evolved, the decision on the protective order that provided for the plaintiffs a reasonable range of discovery came in December and plaintiffs were allowed a reasonable range of discovery on their systemic allegations around the named plaintiff's children. That meant all the aggregate data around these children, their case files, and so forth. As discovery proceeded, and by the way, Your Honor, at that hearing, counsel for plaintiffs did in fact indicate that they were looking for and would require us to go through the files of every child in DCYF care. And that's, we believe, the reason why the protective order was entered, narrowing the scope to the systemic allegations around the named plaintiffs. But moving forward, the state had moved for discovery of the claims of the plaintiffs, and that's where this order, or I'm sorry, this decision arises, where Magistrate Judge Allman indicates that they had been precluded from obtaining some policy and custom evidence. No, no, he didn't say some policy and custom evidence. Yes. He said effectively foreclosed all policy and custom evidence. All. Yes. All right? Yes. Well, isn't that part of their case policy and custom evidence? It is, Your Honor. Actually, we looked at the Walmart decision, the class action. It's a Title VII claim on pattern and practice. In that case, the Supreme Court recognizes that when you're looking at pattern and practice, it's the standard operating procedure of the entity that you're looking at. It's not something that's held behind the shield. Title VII case, we're dealing with a 1983 case brought against officials in their official capacity. All right? In order to make out even an individual claim, the individual has to show that some custom policy or practice of the state either caused him significant harm or exposed him to a risk of significant harm. And that's not only harm that now, that has already occurred, but also harm that may be threatened by policy or custom because this is a suit not for money damages, backward looking, but a suit for injunctive relief, forward looking. Yes. Okay. And I have two responses to that, Your Honor. And it refers back to the record. First, in the context of what they were provided, when the buildup to the motion for protective order came, there was a discovery on the systemic claims that were being made. And you look at the 30B6 deposition notices, which is document 356, they had evidence of child protective services, family service unit information. They had licensing information. They had child behavioral health. They knew where the and how we documented it and how we collected aggregate data. They had that evidence prior to the motion for protective order. Well, then what was the need for the protective order to foreclose policy and customary? Because as I go back to the statement that was made by counsel at that hearing, they were looking to get into the files of every child in DCYF. It was an incredible burden at that point in time just to be able to marshal the evidence that we had. And Judge Lisi was looking to move this case forward to bring it to a focus of the named plaintiffs. And that's part of the reason why we were looking at the certification issue, Your Honor, because of the nature and the burden that was being sustained by the state agency as we were resigning to the discovery in this case. But there's a second answer to this, Your Honor, as well. And a third. The second one is when they talk about, well, they didn't get the evidence of the child protective services and how long it took to complete investigations. Well, in the record, their expert talked about a couple of reports that they had. Report 160 and there was another report, 250. They also got another report, 259. If you look at our brief from pages 37 to like 41 or 2, we outline some of the systemic evidence that they had. And again, and this is the other point, Your Honor, during the course of this, Magistrate Allman allowed them the opportunity to come back and bring to the court a motion to compel or some request for more discovery. They, in fact, did that on July 29th. They moved for more discovery. And they didn't provide any specifics as to what they were looking at. And Judge Lisi passed on that in the August 14th decision where she recollected that they had received this 30B6 information and they had the evidence of the systemic failures. And finally, Your Honor, if I may, at trial, their experts never came forward and offered any proof, an offer of proof that would have identified if they had this, then we've been able to opine about whatever it is that they thought that they could opine about. That's not the place at trial. You're asking them to say that records we never got, all right, if we had gotten them, we would be able to prove X. What I'm struggling with is the notion. Here I have this decision by the magistrate judge, which he describes, which the district court affirms, effectively foreclosed all policy and custom discovery. That's a categorical statement. You now say, well, they actually had some, all right? And the plaintiff says they didn't. And what quantum or what measuring device is available to us to determine what percentage of the custom and policy evidence they got or they didn't get, that evidence, as far as I can tell, isn't catalogued anywhere. So you want us to pick out from what they were able to scrape together and present at trial a few things and say, see, that proves they had some and they didn't get the great bulk of it. And I don't know how we piece this together, particularly in the absence. I think you agree that there is no actual protective order issued. There is simply the decision saying what the magistrate judge ordered. Well, there's a protective order document 230, which is the first protective order, but then when Judge Almond precluded us from getting the discovery where he made that offhand comment, Your Honor, which I believe is an offhand comment, there was no order that followed on to that. But, Your Honor, the point I think this really comes up, and to your point, if, in fact, the plaintiffs believe that they were entitled to some discovery that they didn't get, it was incumbent upon them to identify it for the district court, and they needed to do that in July and into August when they, in fact, did that. And they didn't bring it forward with any specificity, except as general, lift the protective order and let's move forward with class certification. Excuse me. How do you do it when discovery has been precluded as to it? If the district court and the magistrate judge had said, I'll limit your policy and custom discovery to having the state produce an inventory of the records of what policies and customs it has, and then we can fight about which of those should be produced. But if you've got no inventory, no way to tell what policies the state has, what customs the state may follow, I don't see how you can, on the one hand, say you're precluded from any discovery about that, but you've waived your rights because you didn't specify exactly what you didn't get. Well, Your Honor, to that end, they did get a list of all of our aggregate reports and all that aggregate data, and then they had the 30B6 depositions of the administrators of these various And they never came back and indicated, well, we need this particular piece of evidence or we need that particular piece of evidence. And so, to that degree, we. And you say, excuse me, you say the aggregate data list. Yes. All right, will reflect what customs and policies the state followed and didn't follow? It will reflect the aggregate reports on the various system issues. It will give aggregate data. Yes. But it seems to me data and policies are two different things. Well, what I'm suggesting, Your Honor, is they would have the data and then be able to examine the administrators on those very specifics as it relates to the practices and policies and customs that were being utilized by the DCYF. But at bottom, Your Honor, at bottom, they couldn't support a claim as it relates to the individual plaintiffs, named plaintiffs in this case, either systemically through the types of claims and the theories that they had in this case legally or by showing that there was any harm from any action or interaction to the named plaintiffs. Mr. Kelly, before you use up the limited time you have left. Yes. Say something about the state's position about preclusion of access to counsel. Yes, Your Honor. We believe this came about, well, to back up, the plaintiffs' counsel, while discovery was ongoing in November of 2012, moved for access to the children and then inexplicably withdrew that motion in January. Okay, but that motion is not before us. We're concerned with the one in the couple of months right before trial. Right. And discovery closed and just before trial they moved again. And Judge Lisi based her decision on two things. Right. Primarily timing and the aspect of discovery. Let's talk about timing. She said discovery is closed, therefore you can't have access to your own clients. How does that make any sense? Well, Your Honor, she also allowed. No, no, but let's stick to that. I understand she has a second reason. Yes. All right. Let's stick to that reason. How does that make any sense? If you interview your clients and come up with new material, you may be precluded from using the new material because of the discovery part. But you're still entitled to prepare your clients for trial. Have you ever tried a case where you haven't interviewed your clients at some point after the close of discovery and before the trial started? No, Your Honor. No, of course not. No, but listen. So that reason cuts no mustard. So what's her other reason? Her other reason is that I granted you a psychological examination and your psychologist has had a chance to examine the children. Well, Your Honor. Isn't that her second reason? That is the second reason. Does that make any sense? It does, Your Honor, in the context of who these children are. Well, wait a minute. Wait a minute. Here's a psychological examination that is going to be videotaped and given to your litigation adversaries. How does that substitute from your right to interview your own clients and prepare them for trial? You don't do that in public and with the other side looking on, forgetting the fact that the psychologist has a completely different purpose than the attorneys in interviewing the children. Well, Your Honor, first of all, plaintiffs did not object to the videotaping of the. . . No, of course not, because the psychological examination serves a valid purpose. I'm not questioning that. What I'm questioning is the idea that that can be a surrogate for giving an attorney access to his own clients. Your Honor, the overarching concern is the well-being of these children. That's true. Was there any evidence that access by the attorney would have any interference with the well-being? I've had a law clerk search the record on that one point, and I understand there's not a shred of evidence that suggests that and that the only medical evidence suggests the contrary. That was the evidence that we obtained from the psychologists that were the treaters, Your Honor. But the question about the well-being of the children was certainly hanging and was not addressed by plaintiffs at all in the context of moving forward with this motion, which was, as we understood it, for tactical reasons, understanding the need to, as you suggest, interview the children. But by the same token, Dr. Adamakis was, in fact, allowed to examine the children. And furthermore, when they talk about the hearsay aspect of this, plaintiffs didn't go out and get other information from the providers. They had information from the DCYF file, so they had statements that would have alleviated that concern. But to your point, Your Honor, they did have access to the children through Dr. Adamakis, who did have the opportunity to discuss with them the issues that they believed were important. What do you say to the point that your brother on the other side made, that they wanted to interview the kids to see whether they'd be witnesses? Your Honor, they didn't move for a deposition. They didn't move for a particular discovery of the children prior to the time that the case was ongoing with fact discovery. And the issue just was never presented to Judge Alici, we believe, in that context. We believe it came up in terms of tactics, and we believe that they had appropriate access through Dr. Adamakis. So I gather from that answer that there's a book upstairs in the library that I overlooked. Kelly on civil procedure. Depose your own client before trial, or else you're foreclosed from interviewing your client. I'm suggesting, Your Honor, that there was no effort made in the time to be able to address these matters. It came up late in the context of the trial and the proceedings before Judge Alici, and that her two baseses were sound in that regard. Well, let me, I don't want to prolong this too far. If I may ask one more question here. You pointed out that the issue was presented to the trial court as an issue of conferring on tactics. And my recollection of the briefs is that that was essentially the way it was presented here. To the best of your knowledge and recollection, was there ever any request made to the trial court for access to the children to determine whether they would be witnesses? Not that I recall, Your Honor. Okay. I thought that the request for access, when Judge Alici asked counsel for their purpose, said that their purpose was to prepare their trial testimony. As I understood it, Your Honor, it was to talk to them about tactics at trial. That's the way we understood it. All right. But those words, preparing their trial testimony, in your recollection, weren't used? I can't recall that as I stand here, Your Honor. Thank you, Mr. Kelly. Thank you both. We'll take the case under advisement.